# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT THOMAS, | ) 1:10cv02173 AWI DLB PC |
| Plaintiff, | ) FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | ) (Document 39) |
| J RAZO, et al., | ) |
| Defendants. | ) THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Robert Thomas ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on November 22, 2010. Pursuant to the Court's July 8, 2011, order, this action is proceeding on Plaintiff's claim that Defendants Razo, Moreno, Brown, Vera, Vasquez and Holguin used excessive force against him in violation of the Eighth Amendment of the United States Constitution.

On September 21, 2012, Defendants filed this motion for summary judgment. Plaintiff filed an opposition on October 1, 2012, and Defendants filed a reply and evidentiary objections on October 8, 2012.[1]

---

[1] In Defendants' September 21, 2012, notice, filed concurrently with their motion for summary judgment, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

1

I.      **LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

## II. STATEMENT OF FACTS[2]

A. *Defendants' Facts*

Plaintiff is a prisoner of the State of California and is incarcerated at the California Correctional Institution ("CCI"). Ex A., Abstract of J.; Ex. B, Snider Decl. ¶ 3.

On April 5, 2010, Defendant Officer J. Razo and Defendant Officer A. Moreno were providing coverage for the Unit Classification Committee ("UCC"). Defendant Razo was inside the UCC office with Defendant Correctional Counselor Brown and Correctional Counselors Chapman and Holman. Ex. C, Razo Decl. ¶ 3; Ex. E, Brown Decl. ¶ 3, Ex. D, Moreno Decl. ¶ 3. UCC meetings are held for initial and subsequent program assignments, changes and transfers. Razo Decl. ¶ 4. Plaintiff was recently transferred from Corcoran State Prison to CCI. Ex. L, Plaintiff's Classification Chrono.

After reviewing Plaintiff's case factors, the UCC elected to retain Plaintiff's Level IV status. Plaintiff's disciplinary history included receiving Rules Violations Reports for threatening staff, battery on a peace officer, battery on a non-prisoner and resisting a peace officer during cell extraction. Brown Decl. ¶ 4; Plaintiff's Classification Chrono. Plaintiff agreed with his cell and yard status, but he disagreed with his Level IV placement. Brown Decl. ¶ 5. Plaintiff became argumentative, speaking very loudly and becoming verbally aggressive towards Counselor Chapman. He began moving his arms up and down aggressively. Counselor Chapman instructed Plaintiff to lower his arms and hands when talking, and listen to her. Plaintiff complied with the orders to lower his hands and arms, but would not allow Counselor Chapman to finish her sentences. Razo Decl. ¶ 5, Brown Decl. ¶ 5. Counselor Chapman ended the UCC meeting and asked Plaintiff to leave the room. Razo Decl. ¶ 5, Brown Decl. ¶ 5. Plaintiff appeared angry as he left the UCC room. Razo Decl. ¶¶ 5, 6.

---

[2] Because Plaintiff's version of events and Defendants' version differ so greatly, both will be included.

As Plaintiff walked towards the rotunda, he turned and glared at Defendant Razo. Defendant Razo asked Plaintiff why he was staring at him, and Plaintiff stated, "You have to earn my respect." Plaintiff then stalled and refused to return to his cell. Razo Decl. ¶ 6, Brown Decl. ¶ 6. Defendant Razo ordered Plaintiff to go back to his cell twice, but Plaintiff did not comply. Defendant Razo then told Plaintiff to turn around so he could cuff him. Razo Decl. ¶ 7, Brown Decl. ¶ 7.

Plaintiff refused Defendant Razo's orders and instead took a fighting stance, bringing his clenched fist to his chest, blading his stance and advancing towards Defendant Razo. In fear that Plaintiff would attack him, Defendant Razo used his pepper spray, aiming and spraying Plaintiff in the upper body and facial area while ordering him to get down in the prone position. Razo Decl. ¶ 8, Brown Decl. ¶ 7; Moreno Decl., ¶ 5. As Defendant Razo moved away from Plaintiff, he slipped and fell, injuring his right knee. Razo Decl. ¶ 9. Defendant Razo could not see if Plaintiff complied with his orders to get down because of the effects of the pepper spray, but he could hear Defendant Moreno continue to order Plaintiff to get down into the prone position. Razo Decl. ¶ 10; Moreno Decl.¶ 6; Brown Decl. ¶ 7.

Fearing for Defendant Razo's safety, Defendant Brown, who had witnessed Defendant Razo's use of pepper spray, went to the rotunda area and used her pepper spray fogger to help gain Plaintiff's compliance. Brown Decl. ¶ 8. Defendant Moreno also administered a burst of pepper spray to Plaintiff's face when he refused to obey orders. Moreno Decl. ¶ 6; Brown Decl. ¶ 8. Defendant Moreno was overcome with pepper spray and had to exit the rotunda. Moreno Decl. ¶ 7.

After being sprayed by Defendants Moreno and Brown, Plaintiff got down on the floor into the prone position and the responding officers, Defendants Holguin and Vera, came to escort Plaintiff out of the rotunda. Brown Decl. ¶ 10.

Responding staff also assisted Defendant Razo to the clinic due to his injured right knee and pepper spray exposure. Razo Decl. ¶ 8. He was examined by Nurse Roberts and cleared to go home. Razo Decl. ¶ 8.

When Defendants Holguin, Vera and Vasquez arrived, they were informed that Plaintiff had attacked a correctional officer and that the officers had to administer pepper spray. Defendants Holguin and Vera placed handcuffs on Plaintiff and escorted him to a holding cell for decontamination. Ex. F, Holguin Decl. ¶ 3; Ex. G, Vera Decl. ¶ 3; Ex. H, Vasquez Decl. ¶ 3.

Defendant Vasquez followed Defendants Holguin and Vega to the clinic, where he searched the holding cell. Vasquez Decl. ¶ 4. Defendant Vasquez held the cell door open while Defendants Holguin and Vega attempted to place Plaintiff into the cell. As he was holding the door open, Plaintiff kicked him in the left knee area with his right foot. Vasquez Decl. ¶ 5; Vera Decl. ¶ 4; Holguin Decl. ¶ 5.

In response to the attack, Defendants Vera and Holguin pushed Plaintiff to the ground. As they held Plaintiff on the ground, he was being resistive by kicking his feet, moving his upper body from side to side and attempting to turn his body around to face staff. Vasquez Decl. ¶ 5; Vera Decl. ¶ 4; Holguin Decl. ¶ 5. Defendant Holguin ordered Plaintiff to stop resisting, but he did not comply and continued to thrash on the ground. Holguin Decl. ¶ 7; Vera Decl. ¶ 5; Vasquez Decl. ¶ 6. Defendant Vasquez then used pepper spray, aiming at Plaintiff's face, and Plaintiff became compliant and stopped resisting. Holguin Decl. ¶ 7; Vera Decl. ¶ 5; Vasquez Decl. ¶ 6.

Officer Cardenas applied leg restraints on Plaintiff and Defendant Holguin ordered Plaintiff to stand up and face the wall multiple times. Holguin Decl. ¶ 8; Vera Decl. ¶ 6; Ex. I, Cardenas Decl. ¶¶ 4, 5. Plaintiff refused Defendant Holguin's orders, and instead quickly turned his body to the right and advanced towards Defendant Holguin. In response, Defendant Holguin administered a five second burst of pepper spray to Plaintiff's facial area. Holguin Decl. ¶ 9;

6

Vera Decl. ¶ 7; Cardenas Decl. ¶¶ 5, 6.  Defendants Holguin and Vera obtained control of Plaintiff.  Vera Decl. ¶ 8; Cardenas Decl. ¶ 6.  Officer Cardenas removed Plaintiff from the holding cell for fresh air decontamination and medical staff was called to examine him.  Vera Decl. ¶ 8; Cardenas Decl. ¶ 6; Ex. J, Kimble Decl. ¶ 3.

Nurse Kimble examined Plaintiff, who stated that his body burned from the pepper spray.  Plaintiff said he had asthma and was given an inhaler.  Nurse Kimble did not observe any visible injuries to Plaintiff other than pepper spray exposure.  Plaintiff was cleared to return to his cell.  Kimble Decl. ¶4; Ex. M, Thomas Medical Report.

Nurse Kimball also examined Defendant Vasquez for redness in his left knee area.  He indicated that he wished to remain at work and would see his personal doctor, if necessary.  Kimball Decl. ¶ 5; Ex. O, Vasquez Medical Report.

As a result of the incident, Thomas was issued two Rules Violation Reports- one for Assault on a Peace Officer for the assault on Defendant Razo, and one for Battery on a Peace Officer for the injury caused to Defendant Vasquez.  He was found guilty of the violations and assessed 150 days forfeiture of credit for each charge and referred to the Institutional Classification Committee for placement in the Secured Housing Unit.  Snider Decl. ¶¶ 5, 6; Ex. Q, CDC Form 115, Log No. CCI-4A-10-04-0007; Ex. P, CDC Form 115, Log No. CCI-4A-10-04-0012.

B.  *Plaintiff's Facts*[3]

On April 5, 2010, as Plaintiff was exiting the UCC meeting, Defendant Razo asked him "what the fuck" he was looking at.  Plaintiff asked what he was talking about and Defendant Razo then told Plaintiff to turn around and cuff-up.  Plaintiff turned around, with his back facing Defendant Razo so he could cuff him.  Compl. 3.  However, Defendant Razo pepper sprayed

---

[3]  Plaintiff's facts are taken from his November 22, 2010, verified complaint and his October 1, 2012, verified opposition.  Verified pleadings and oppositions constitute opposing affidavits for purposes of summary judgment.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

7

Plaintiff in the back of his head and the side of his face, and then reached around and sprayed the front of his face.  He then told Plaintiff to get down on the ground, and Plaintiff complied. Compl. 4.

After Defendant Razo sprayed Plaintiff and he was prone on the ground, he was having trouble breathing.  Plaintiff asked Defendant Moreno to get him up off the ground, but Defendant Moreno pepper sprayed Plaintiff directly in the face while he was on the ground.  Compl. 3-4

Plaintiff then asked Defendant Brown to get him up off the ground, but Defendant Brown pepper sprayed Plaintiff directly in the face while he was down on the ground.  Compl. 4-5.

After being pepper sprayed three times, Plaintiff lay on the ground in a prone position until he was eventually handcuffed and stood to his feet by Defendant Holguin.  Plaintiff was escorted to the 4A Clinic area by Defendants Holguin, Vera and Vasquez.  Once Plaintiff got to the Clinic room, Defendant Vera pushed him into the room across from the central booth.  He was then slammed to the ground by Defendants Vera and Holguin.  The room door was closed, and Defendants Vera and Holguin began hitting Plaintiff in the back of the head and back with a closed fist.  At the same time, Defendant Vasquez kicked Plaintiff in his upper chest area, left arm and left side.  This all occurred while Plaintiff was in handcuffs.  Compl. 7.  Defendant Vasquez suddenly stopped kicking Plaintiff and pepper sprayed him directly in his eyes, nose and mouth.  Compl. 7.

Defendants Vera, Vasquez and Holguin then violently "snatched off" Plaintiff's pants, shoes and socks.  Plaintiff was in hand and leg restraints and was finally placed in a holding cell. However, Defendant Holguin took out his pepper spray and sprayed Plaintiff in the face.  Compl. 8.

Plaintiff has lingering medical issues.  Compl. 8.  He has seen the nurse five times and the doctor once, and suffers from blurred vision, light headedness, headaches and dizziness. Opp'n 6.

III.   **ANLAYSIS**

    A.   *Defendants' Legal Standard*

As a threshold matter, Defendants have made it clear to the Court that either they are not familiar with summary judgment in prisoner cases involving excessive force, or they simply misunderstand the analysis on summary judgment.

Defendants' first error occurs early in their moving papers when they state, "Thus, Thomas may not rest on his operative complaint in opposition to defendants' motion for summary judgment." Defs.' Mot. 6.  To the contrary, the Ninth Circuit has repeatedly recognized that in pro se cases, verified pleadings, including complaints and oppositions, may be used as opposing affidavits if based on the pleader's personal knowledge of specific facts which are admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987).

Second, Defendants argue for summary judgment based mainly on what they characterize as "overwhelming evidence."  The weight of the evidence, however, is not the standard on summary judgment.  So long as there is a genuine issue of material fact, regardless of where the weight of the evidence lies, summary judgment must be denied.  Defendants appear to rely on the standard for judgment as a matter of law, but in doing so, they improperly ignore the factual inquiry necessary on summary judgment.

Finally, in light of the vastly different facts set forth by Plaintiff and Defendants, the Court questions Defendants' justification in bringing this motion.  In such scenarios, summary judgment motions are largely unsupported and are burdensome to the Court.  "'[S]ummary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'"  Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).

B.      *Eighth Amendment – Excessive Force*

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

       1.      Defendants Razo, Moreno and Brown

Defendants Razo, Moreno and Brown contend that they are entitled to summary judgment because their use of force was necessary to maintain safety and restore order, and was applied in good faith. They contend that Plaintiff refused Defendant Razo's orders to go back to his cell and instead took a fighting stance. This led Defendant Razo to believe that Plaintiff was going to assault him, so he sprayed him with pepper spray while ordering him to get down into a prone position. Based on their observations, Defendants Moreno and Brown also believed that Defendant Razo was in danger so they, too, sprayed Plaintiff with pepper spray.

Plaintiff alleges in his verified complaint and verified opposition, however, that Defendant Razo asked him "what the fuck" he was looking at. Plaintiff asked him what he was talking about and then complied with Defendant Razo's orders to turn around and cuff-up. Despite his compliance, Plaintiff contends that Defendant Razo pepper sprayed him and then ordered him down to the ground. Plaintiff again complied, but was then pepper sprayed by Defendants Moreno and Brown. Plaintiff states that he never assaulted, or attempted to assault, Defendant Razo.

Based on these differing factual statements, there is a genuine dispute of material fact. While Defendants contend that Plaintiff was aggressive and non-compliant, Plaintiff contends that Defendant Razo's question set off the incident, and that despite his compliance, he was pepper sprayed by Defendants Razo, Moreno and Brown.

Defendants argue that Plaintiff's allegations are "unsubstantiated" and "contradicted by the overwhelming evidence." Defs.' Reply 3. Again, Plaintiff's facts are taken from his verified pleadings and would be admissible evidence.[4] Although Defendants suggest this is insufficient in light of their evidence, the weight of the evidence is irrelevant for summary judgment

---

[4] Defendants object to certain statements made by Plaintiff. For example, they object to Plaintiff's contention that all Defendants admitted to using pepper spray, that they were trying to kill him because they knew he had asthma and that they filed false Rules Violation Reports. The Court need not rule on these objections, however, because the cited statements are not necessary to the Court's ultimate ruling on summary judgment.

purposes. Based on Plaintiff's verified complaint and verified opposition, construed in the light most favorable to Plaintiff as the non-moving party, there remains a genuine dispute of material fact as to whether Defendants' application of force was excessive in violation of the Eighth Amendment.

### 2. Defendants Holguin, Vera and Vasquez

Similarly, Defendants Holguin, Vera and Vasquez argue that they are entitled to summary judgment because their use of force was reasonable and necessary. They contend that it was necessary for Defendants Vera and Holguin to push Plaintiff to the ground because he kicked Defendant Vasquez. Plaintiff continued to resist when Defendants Vera and Holguin were holding him down on the ground, and Defendant Vasquez pepper sprayed him. Plaintiff continued to refuse orders after he was placed in leg restraints and advanced towards Defendant Holguin. Defendant Holguin administered another burst of pepper spray to Plaintiff's face.

According to Plaintiff's verified complaint and opposition, however, he never assaulted, or intended to assault, Defendant Vasquez. Nonetheless, Defendant Vera pushed him into the room and then, with Defendant Holguin, slammed him to the ground, closed the door and began hitting him. At the same time, Defendant Vasquez kicked Plaintiff and then pepper sprayed him. This all occurred while Plaintiff was in handcuffs. Defendant Holguin pepper sprayed Plaintiff again after he was in the holding cell.

These scenarios present genuine disputes of material fact. While Defendants contend that Plaintiff was aggressive and refused orders, Plaintiff asserts that he did not assault Defendant Vasquez and was instead pepper sprayed and beaten while in handcuffs.

In their reply, Defendants argue that Plaintiff has not produced evidence to corroborate his alleged physical injuries. At this stage, however, Plaintiff is not required to produce supporting evidence beyond his admissible testimony. Plaintiff states that he saw the nurse on

five occasions and has lingering medical problems, including blurred vision, light headedness, headaches and dizziness.

Therefore, based on Plaintiff's verified complaint and verified opposition, construed in the light most favorable to Plaintiff as the non-moving party, there remains a genuine dispute of material fact as to whether Defendants' application of force was excessive in violation of the Eighth Amendment.

Accordingly, Defendants' motion for summary judgment should be denied.

C.    *Qualified Immunity*

Defendants also contend they are entitled to qualified immunity.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The other inquiry is whether the right was clearly established.  Saucier, 533 U.S. at 201.  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes

in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

The Court finds that Defendants are not entitled to qualified immunity.  Taken in the light most favorable to Plaintiff, the facts indicate a violation of Plaintiff's rights under the Eighth Amendment, as stated above.  Such rights were clearly established at the time of the incident.  See, e.g., Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

## IV.    CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment, filed September 21, 2012, be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **February 11, 2013**                    /s/ Dennis L. Beck
                                                                    UNITED STATES MAGISTRATE JUDGE